**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | | |
|---|---|---|
| Frank A. Coon, as Administrator for the Estate of Louis A. Coon, deceased, | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiff, | : | |
| | : | Civil Action No.: |
| v. | : | |
| | : | |
| County of Camden, CFG Health Systems, LLC, | : | |
| CFG Health Network, LLC, Former Warden | : | |
| Karen Taylor, John Doe Correctional Medical | : | |
| Entities 1-10, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, | : | |
| | : | |
| Defendants. | | |

## COMPLAINT

Plaintiff, Frank Coon ("Plaintiff"), individually and as administratrix of the Estate of Louis A. Coon ("Louis"), deceased, by and through his attorneys, Grant & Eisenhofer, P.A., asserts the following complaint against Defendants the County of Camden, CFG Health Systems, LLC, CFG Health Network, LLC, Former Warden Karen Taylor, John Doe Correctional Medical Entities 1-10, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10 (collectively "Defendants"), and in support thereof, avers as follows:

## INTRODUCTION

1.      This civil rights action arises out of the preventable death of Louis A. Coon, a pretrial detainee who suffered from Type 1 Diabetes and died due to Defendants' deliberate indifference to his serious medical needs while detained at Camden County Correctional Facility ("CCCF").

2.      Despite being aware of Louis's insulin-dependent diabetes, Defendants failed to provide necessary medication, appropriate intake screening, and routine monitoring of his

condition. As a result, he deteriorated rapidly from a lack of insulin medication and was found unresponsive in a CCCF shower on November 22, 2023.

3.      Only at that point was Louis transported to Cooper University Medical Center, where he was pronounced dead shortly thereafter. The cause of death was diabetic ketoacidosis, which is both preventable and treatable with proper medication and monitoring.

4.      Louis was 50 years old; he left behind elderly parent, Frank and Gianina and an 8-year-old son, G.C.

5.      As a result of Defendants' conduct, Plaintiff brings this action under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, as well as supplemental claims under New Jersey law, including the New Jersey Constitution and the New Jersey Civil Rights Act.

## **PARTIES**

6.      Plaintiff, Frank Coon, is the duly appointed Administrator of the Estate of Louis A. Coon, deceased, the father of Louis A. Coon, deceased, and resides in the Commonwealth of Pennsylvania.

7.      Plaintiff timely filed Notices of Claim against Camden County, CFG Health Systems, LLC, and CFG Health Network, LLC on February 13, 2024.

8.      The sole beneficiary of Louis A. Coon is G.C.

9.      At all relevant times, Louis A. Coon, deceased, was a pretrial detainee housed at CCCF. He suffered from Type 1 diabetes, a serious medical condition requiring daily insulin and blood sugar monitoring.

10.      Defendant County of Camden is a municipal entity organized under New Jersey law, and is responsible for operating CCCF, including the policies, supervision, staffing, and provision of medical care to pretrial detainees.

2

11.    Defendant CFG Health Systems, LLC ("CHS") is a limited liability company organized under the laws of New Jersey with a principal place of business located at 250 Century Parkway, Suite 250, Mount Laurel, New Jersey.

12.    At all relevant times, Camden County contracted with CHS to provide medical services at CCCF and is involved in the delivery and supervision of medical services at CCCF.

13.    Defendant CFG Health Network, LLC ("CHN") is a New Jersey limited liability company with a principal place of business located at 765 East Route 70, Building A-100, Marlton, New Jersey, 08053.

14.    At all relevant times, Camden County contracted with CHN to provide medical services at CCCF and is involved in the delivery and supervision of medical services at CCCF.

15.    Defendants John Doe Correctional Medical Entities 1–10 are fictitiously named Defendants who were at all times relevant to this action contracted with Camden County to provide medical services at CCCF and were involved in the delivery and supervision of medical services at CCCF.

16.    Former Warden Karen Taylor ("Warden Taylor") was at all times relevant to this action the Warden of CCCF. Warden Taylor was responsible for operations at the CCCF and the welfare of pretrial detainees like Louis.

17.    Warden Taylor was the policymaker responsible for ensuring that pretrial detainees received prompt and effective medical intake screening and subsequent monitoring to ensure serious medical needs were being addressed in a timely and appropriate manner.

18.    Warden Taylor is being sued in her individual capacity as a warden, supervisor, and correctional officer for the County of Camden at CCCF.

19.    Defendants John Doe Correctional Officers 1–10 are fictitiously named Defendants who were at all times relevant to this action correctional officers, sergeants, lieutenants, and/or captains for the County of Camden at CCCF.

20.    At all times relevant hereto, Defendants John Doe Correctional Officers 1–10 were responsible for admitting Louis into CCCF, monitoring Louis during his period of detention, delivering him to and from medical providers, delivering medication to him, and accurately communicating his serious medical needs to Defendant John Doe Medical Providers 1-10.

21.    At all times relevant hereto, Defendants John Doe Correctional Officers 1–10 encountered Louis upon his admission and/or intake into CCCF and/or were assigned to Louis's floor and/or cellblock during his period of detention, and/or who communicated with CCCF staff and medical staff regarding Louis's medical condition, medications, and/or medical needs, and/or received communications from CCCF and medical staff regarding Louis's medical condition, medications, and/or medical needs.

22.    Defendants John Doe Correctional Officers 1–10 are being sued in their individual capacities as correctional officers for the County of Camden.

23.    Defendants John Doe Medical Providers 1–10 are fictitiously named Defendants who were at all times relevant to this action medical providers, including doctors, nurses, and physician assistants, employed by or otherwise contracted with CHS, CHN and/or John Doe Correctional Medical Entities 1–10 to provide medical services at CCCF to pretrial detainees, like and including Louis.

24.    At all times material hereto, Defendants John Doe Medical Providers 1–10 were responsible for: (1) performing medical intake screening to pretrial detainees; (2) re-assessing pretrial detainee following the first 24 hours of incarceration; (3) conducting examinations; (4)

administering and ordering medications; (5) accurately documenting the medical conditions of pretrial detainees; (6) effectively communicating with correctional staff to ensure medical needs are addressed in timely and appropriate fashion; and (7) otherwise attending to the medical needs of pretrial detainees at CCCF, including Louis.

25.    At all times material hereto, Defendants John Doe Medical Providers 1–10 encountered Louis upon his admission and/or intake to CCCF, during reassessment, and/or during examinations, and/or who communicated with CCCF staff regarding Louis's medical condition, medications, and/or medical needs, and/or received communications from CCCF staff regarding Louis's medical condition, medications, and/or medical needs.

26.    Defendants John Doe Medical Providers 1–10 are being sued in their individual capacities as medical providers acting for CCCF and the County of Camden.

27.    The true names and identities of Defendants John Doe Correctional Medical Entities 1–10, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1–10 are known to Defendant County of Camden, but have been shielded and withheld from Plaintiff and the general public by Defendant County of Camden. Plaintiff intends to amend this Complaint to include their names and identities when the same are ascertained.

## JURISDICTION AND VENUE

28.    This action is brought pursuant to 42 U.S.C. § 1983.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.  Plaintiff further invokes the supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear and decide claims under state law.

29.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## FACTUAL ALLEGATIONS

30.     On or about November 19, 2023, Louis was transported to Camden County CCCF as a pretrial detainee.

31.     Louis was 50 years old and insulin-dependent due to a long-standing diagnosis of Type 1 diabetes.

32.     At all times relevant, it was common knowledge, and thus would have or should have been known Defendants County of Camden, Warden Taylor, CHS, CHN, John Doe Correctional Medical Entities 1–10, John Doe Correctional Officers 1–10, John Doe Medical Providers 1–10 (collectively "Defendants"), that individuals with diabetes may need daily insulin medication in the proper dosage and daily blood sugar monitoring.

33.     Upon admission to CCCF, Louis was placed in the custody and care of Defendants, as well as correctional and medical staff acting under their supervision and direction and/or working in concert with them.

34.     At all relevant times, Defendants knew or should have known that Louis was Type 1 diabetic and was insulin dependent.

35.     At no point between November 19, 2023 and November 22, 2023 did Defendants provide Louis with the insulin medication he required, or the proper amount of said medication, or regular blood sugar monitoring.

36.     As a result, Louis developed diabetic ketoacidosis, which went untreated during the course of his three-day admission to CCCF.

37.     Diabetic ketoacidosis is a potentially fatal complication of diabetes that occurs when the body has much less insulin than it needs. This problem causes the blood to become acidic and the body to become dangerously dehydrated. Diabetic ketoacidosis occurs when diabetes is not treated adequately.

38.     People with Type 1 diabetes (insulin-dependent diabetes), like Louis, do not produce enough insulin and must inject it daily. People with Type 1 diabetes are at risk of diabetic ketoacidosis.

39.     Ketoacidosis can occur when a diabetic does not receive insulin injections or when their insulin dose is too low. It can be triggered by severe physical stress, such as a period of incarceration, because the body can need more insulin than usual during such a period.

40.     A person with ketoacidosis may seem to be tired or confused or may have trouble paying attention. Without prompt treatment in the first day of symptoms, the illness may cause low blood pressure, a loss of consciousness, coma or death.

41.     The need to promptly identify serious medical needs, like diabetes, and thus avoid obvious harms like diabetic ketoacidosis, is reflected in a New Jersey Department of Correction ("NJDOC") directive that requires all new detainees to department of correction facilities, including pretrial detainees like Louis, to undergo a medical screening/intake health appraisal upon reception into custody.

42.     Specifically, the NJDOC directive titled "Health Appraisals at Reception" mandates that every individual admitted to a correctional facility undergo a comprehensive medical exam within a defined timeframe. The directive includes steps such as initial medical evaluation, review of medical history, initiation of necessary treatment (e.g., medication), immunizations, and follow-up by a qualified physician within 72 hours of admission.[1]

43.     Here, upon information and belief, Louis was not provided with an appropriate initial medical evaluation and/or a review of his medical history at the time of his admission into

---

[1] See NJDOC Internal Management Procedure MED.IMA.001, at
https://www.nj.gov/corrections/pdf/LEP/MED.IMA%20.001%20Health%20Appraisals%20at%20Reception.pdf?ut
m_source=chatgpt.com (site last visited July 31, 2025).

CCCF by Defendant John Doe Correctional Officers 1-10, John Doe Medical Providers 1-10, which would have revealed that he was a diabetic who needed insulin at regular intervals.

44.    Notwithstanding this failure to appropriately assess Louis's condition at admission, his Type 1 Diabetes did become known to Defendants at some point prior November 22, 2023 — they day he was found unresponsive in a facility shower — because Defendants reported his diabetic condition to Cooper University Hospital.

45.    Defendants detained Louis, a known diabetic, while not providing him with insulin medication, or an appropriate amount of said medication, or blood sugar monitoring.

46.    Upon information and belief, Louis displayed obvious signs that evidenced his need for insulin medication, such as dehydration, excessive urination, confusion, extreme thirst, and/or nausea and vomiting, well before he became unresponsive in the shower.

47.    Defendants Warden Taylor, and John Doe Correctional Officers 1–10 were responsible for properly admitting Louis into CCCF, transporting Louis to medical providers, monitoring him for medical distress, delivering medication, and communicating known symptoms or concerns to the medical staff.

48.    Defendants CHS, CHN, John Doe Correctional Medical Entities 1–10 and John Doe Medical Providers 1–10 were responsible for performing medical intake screenings, ordering and administering medication, monitoring chronic conditions, and responding to acute symptoms of distress.

49.    Despite these responsibilities, neither Warden Taylor, CHS, CHN, John Doe Correctional Medical Entities 1–10, John Doe Correctional Officers 1-10 nor John Doe Medical Providers 1–10 timely determined that: (1) Louis was a diabetic, (2) he needed insulin medication; (3) the appropriate dosage of necessary medication; (4) the regular intervals in which he needed

medication; or (5) that he was displaying signs and symptoms associated with the onset and worsening of diabetic ketoacidosis.

50.    As a result, on November 22, 2023, Louis was found unresponsive in a CCCF shower. Only at that point was he transported to Cooper University Medical Center, where he was pronounced dead shortly thereafter.

51.    His cause of death was untreated diabetic ketoacidosis.

52.    Defendant Warden Karen Taylor, in her supervisory and policymaking role, was responsible for ensuring that CCCF had policies and procedures in place to adequately screen and treat detainees with chronic medical conditions, including diabetes.

53.    Upon information and belief, Warden Taylor failed to implement or enforce such policies and failed to supervise staff to prevent foreseeable harm to pretrial detainees, like Louis.

54.    Upon information and belief, Warden Taylor was aware of Louis's admission to CCCF and was aware of his diabetic condition, which would have been provided to her by supervisory staff during daily meetings.

55.    Upon information and belief, despite such knowledge, Warden Taylor failed to intercede on Louis's behalf to ensure that he received appropriate insulin medication and regular blood sugar monitoring, even though intercession was necessary due to the obvious risk of serious harm to Louis.

56.    Defendants' conduct, set forth throughout, directly, proximately, foreseeably caused Louis' death.

<u>COUNT I</u>
**42 U.S.C. §1983 — 14th AMENDMENT DELIBERATE INDIFFERENCE**
**Plaintiff Against Warden Taylor, John Doe Correctional Officers 1-10, and John Doe**
**Medical Providers 1-10**

57.     All preceding allegations are incorporated by reference as if fully set forth herein.

58.     Count I is alleged by Plaintiff against Warden Taylor, John Doe Correctional

Officers 1-10, and John Doe Medical Providers 1-10.

59.     The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees'

claims of inadequate medical care. *Wilson v. Camden Cnty. Dep't of Corr.*, No. CV 25-2656 (JXN)

(SDA), 2025 WL 1936937, at *5 (D.N.J. July 14, 2025) (citing *Bocchino v. City of Atlantic City*,

179 F. Supp. 3d 387, 403 (D.N.J. 2016)).

60.     To successfully state such a claim, a pretrial detainee must allege: (1) a serious

medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference

to that need. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and *Natale v. Camden Cnty.*

*Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)).

61.     To successfully plead deliberate indifference, a plaintiff must demonstrate "(1) a

substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3)

causation." *Keeling v. Wetzel*, No. 23-2045, 2024 WL 3770307, at *3 (3d Cir. Aug. 13, 2024)

(quoting Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)).

62.     That Type 1 diabetes is a serious medical need is self-evident, as the diabetic

requires regular insulin medication and, in most cases, daily blood sugar monitoring to stay alive.

63.     Failure to receive necessary insulin medication can lead to diabetic ketoacidosis, a

condition that, if untreated, is fatal.

64.     Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, knew or should have known of Louis's diabetic condition and thus his serious medical need for insulin medication to manage his diabetic condition.

65.     Nevertheless, these defendants, acting under color of state law, were deliberately indifferent to Louis's serious medical need because they failed to provide him with: (1) insulin medication; (2) appropriate blood sugar monitoring; or (3) any other manner of appropriate medical care, such as timely transport to a local hospital. Instead, he was left to deteriorate into a severe state of ketoacidosis for three days, until he was found near death, unresponsive in a CCCF shower.

66.     The acts and omissions of Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10 were thus a proximate cause of Louis's pain, suffering and untimely death.

67.     As a result of the above actions, Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10 deprived Louis of his substantive due right to life and bodily integrity, which is protected under the 14th Amendment to the Constitution of the United States.

68.     As a direct and proximate result of the aforesaid substantive due process violation by Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, Louis was caused to sustain serious injuries, including death, as set forth above, the full substance of which is fully incorporated herein by reference.

69.     As a direct and proximate result of the aforesaid substantive due process violation by Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, the risk of harm to Louis was increased and Louis suffered extreme pain and suffering, extreme

mental anguish, serious disabling and permanent injuries, including death, as described above and, loss of earnings throughout his life expectancy, for which Plaintiff here makes claim.

70.     As a direct and proximate result of the aforesaid substantive due process violation by Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been caused to incur various funeral, burial and Estate administration expenses for which the Plaintiff is entitled to compensation in these proceedings.

71.     As a direct and proximate result of the aforesaid substantive due process violation by Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Louis's companionship, guidance, services, counsel, society and comfort.

72.     As a direct and proximate result of the aforesaid substantive due process violation by Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries suffered, are suffering, and will for an indefinite period of time in the future suffer damages, injuries and losses, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from Louis, including monies which Louis would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

73.     As a direct and proximate result of the aforesaid substantive due process violation by Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Louis would have contributed to their support.

74.     As a direct and proximate result of the aforesaid substantive due process violation by Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10,

Louis's wrongful death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications rendered to Louis, for which Plaintiff is entitled to compensation in this proceeding.

**COUNT II**
**42 U.S.C. §1983 — MONELL LIABILITY**
**Plaintiff Against the County of Camden**

75.    All preceding allegations are incorporated by reference as if fully set forth herein.

76.    Count II is alleged by Plaintiff against the County of Camden.

77.    Warden Taylor, John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10 acted under the color of law, and under the authority of one or more interrelated *de facto* policies, practices, and/or customs of the County of Camden to violate Louis's rights as set forth herein.

78.    Prior to November 19, 2023, it was a *de facto* policy, practice, and/or custom of the County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10, to inadequately supervise and train correctional officers and contracted medical staff, including John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, concerning the need to:

    a.    perform thorough intake assessments;

    b.    determine pretrial detainees' medical conditions at intake into CCCF;

    c.    obtain and review medical histories at intake into CCCF;

    d.    properly conduct medical examinations at intake into CCCF;

    e.    properly report any identified chronic conditions of detainees so that the detainee could be monitored for signs of serious medical events by correctional officers and contracted medical staff;

    f.    appropriately schedule and perform reassessments of pretrial detainees;

g.  ensure proper ordering and administration of life-sustaining medications;

h.  monitor pretrial detainees for signs and symptoms of life-threatening illnesses, especially in the context of known medical conditions, like Type 1 diabetes;

i.  implement adequate intake screening protocols;

j.  understand, report and attend to the signs of potentially serious medical events for patients which chronic conditions, like Type 1 diabetes;

k.  report signs of medical events to medical care providers;

l.  adhere to NJDOC directives concerning admission to DOC facilities;

m.  ensure access to necessary medications, including insulin;

n.  appropriately staff correctional officers and medical providers at CCCF in numbers sufficient to adequately observe pretrial detainees and address their medical needs;

o.  appropriately observe the condition of pretrial detainees with known serious medical needs;

p.  timely identify serious medical needs;

q.  timely provide medical care to pretrial detainees with serious medical needs;

r.  recognizing serious medical events with sufficient time to render aid/care to prevent the death of pretrial detainees;

s.  take detainees to the hospital before their medical conditions were so severe they could not be saved;

t.  take complaints regarding medical conditions seriously and to elevate those complaints in a timely and appropriate fashion to ensure no delay in care occurs that is sufficient to cause harm to or death of a pretrial detainee; and

14

u. provide insulin medication and blood sugar monitoring to pretrial detainees with Type 1 diabetes.

79. By failing to adequately train correctional officers and contracted medical providers as set forth above, including John Doe Correctional Officers 1-10, and John Doe Medical Providers 1-10, the County of Camden thereby failed to adequately discourage constitutional violations on the part of its correctional officers and contracted medical providers.

80. As a result of the failures outlined above, Plaintiff was allowed to slip into ketoacidosis, steadily worsen over the course of his detention and eventually lose consciousness and die.

81. County of Camden was aware of the issues set forth above.

82. Indeed, the County of Camden has a long-documented history of failing to provide appropriate medical treatment to pretrial detainees, including a documented failure to provide insulin medication. *See e.g.*, *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003) (pretrial detainee suffers stroke following failure to provide insulin medication in first twenty-one hours of incarceration at CCCF).

83. Moreover, improper medical assessments are also documented at CCCF. *See* Transparency NJ, at https://transparencynj.com/2025/02/21/camden-county-and-cfg-health-settle-wrongful-death-lawsuit-for-325000/ (last visited August 1, 2025) (documenting settlement by the County of Camden and CFG Health Systems over a claim concerning the death of an pretrial detainee who was alleged to have received an improper medical evaluation upon admission to CCCF).

84. The County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10, acted with deliberate indifference by failing to remedy these

known deficiencies in medical care at CCCF, including deficiencies documented in prior complaints and deaths of detainees, and this deliberate indifference by the County of Camden was the moving force behind the deprivation of Louis's substantive due right to life and bodily integrity, which is protected under the 14th Amendment to the Constitution of the United States.

85.     As a direct and proximate result of the aforesaid constitutionally violative deliberate indifference to Louis's serious medical need by the County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis was caused to sustain serious injuries, including death, as set forth above, the full substance of which is fully incorporated herein by reference.

86.     As a direct and proximate result of the aforesaid constitutionally violative deliberate indifference to Louis's serious medical need by the County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10, the risk of harm to Louis was increased and Louis suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described above and, loss of earnings throughout his life expectancy, for which Plaintiff here makes claim.

87.     As a direct and proximate result of the aforesaid constitutionally violative deliberate indifference to Louis's serious medical need by the County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been caused to incur various funeral, burial and Estate administration expenses for which the Plaintiff is entitled to compensation in these proceedings.

88.     As a direct and proximate result of the aforesaid constitutionally violative deliberate indifference to Louis's serious medical need by the County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10 Louis's wrongful death

beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Louis's companionship, guidance, services, counsel, society and comfort.

89.    As a direct and proximate result of the aforesaid constitutionally violative deliberate indifference to Louis's serious medical need by the County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries suffered, are suffering, and will for an indefinite period of time in the future suffer damages, injuries and losses, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from Louis, including monies which Louis would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

90.    As a direct and proximate result of the aforesaid constitutionally violative deliberate indifference to Louis's serious medical need by the County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Louis would have contributed to their support.

91.    As a direct and proximate result of the aforesaid constitutionally violative deliberate indifference to Louis's serious medical need by the County of Camden, through Warden Taylor, CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications rendered to Louis, for which Plaintiff is entitled to compensation in this proceeding.

## COUNT III
### MEDICAL NEGLIGENCE
### Plaintiff v. John Doe Medical Providers 1-10

92.    All preceding allegations are incorporated by reference as if fully set forth herein.

93.     Count III is alleged by Plaintiff against John Doe Medical Providers 1-10.

94.     Plaintiff brings this action on behalf of himself and the wrongful death beneficiaries of Louis A. Coon, as aforementioned, pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, *et seq.*, and claims all damages recoverable thereunder.

95.     Plaintiff brings this action on behalf of the Estate of Louis A. Coon pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3 *et seq* and claims all damages recoverable thereunder.

96.     The injuries sustained by Louis set forth above, including, but not limited to, his death, were proximately caused by the recklessness, negligence and/or carelessness of John Doe Medical Providers 1-10, jointly and severally and/or separately, both generally and in at least the following particular respects:

a.   failing to appropriately investigate and evaluate Louis's specific medical condition upon admission to CCCF;

b.   failing to timely identify that Louis's Type 1 diabetes;

c.   failing to medically address Louis's Type 1 diabetes;

d.   failing to provide proper medical care for Louis' Type 1 diabetes;

e.   failing to order appropriate medication and medical equipment for Louis's Type 1 diabetes;

f.   failing to administer proper medication and monitoring for Louis's Type 1 diabetes;

g.   failing to timely and adequately assess Louis's risk factor for diabetic ketoacidosis;

h.   failing to ensure proper medical supervision over Louis's chronic medical condition;

i.   failing to timely and adequately identify Louis's diabetic ketoacidosis;

j.   failing to timely and adequately diagnose Louis's diabetic ketoacidosis;

18

k.  failing to timely and adequately assess the degree of Louis's diabetic ketoacidosis;

l.  failing to order and/or obtain proper diagnostic testing in the care of Louis, including blood sugar monitoring;

m.  failing to appropriately investigate and evaluate Louis's diabetic ketoacidosis;

n.  failing to consider alternative treatments for Louis's diabetic ketoacidosis;

o.  failing to intervene and treat Louis's diabetic ketoacidosis before it was so severe as to render him unconscious and kill him;

p.  failing to take any mitigating or precautionary measures to account for Louis's diabetic ketoacidosis in the context of his admission to CCCF;

q.  failing to alter or modify policies or procedures upon acceptance or admission of Louis to address his specific medical condition;

r.  failing to ensure the availability and use of appropriate equipment in the care and treatment of Louis's specific medical condition;

s.  failing to discuss with Louis his Type 1 diabetes, the risk of diabetic ketoacidosis, the need for insulin medication, the need for blood sugar monitoring, or the physical stress that incarceration can cause to diabetics and the ramifications thereof;

t.  failing to perform through intake assessments on Louis;

u.  failing to determine Louis's medical conditions at intake into CCCF;

v.  failing to review Louis's medical history at intake into CCCF;

w.  failing to properly conduct medical examinations at intake into CCCF;

x.  failing to appropriately schedule and perform reassessments of Louis;

y.  failing to ensure proper ordering and administration of insulin medication to Louis;

z.  failing to monitor Louis for signs and symptoms of diabetic ketoacidosis;

aa. failing to implement adequate intake screening protocols;

bb. failing to adhere to NJDOC directives concerning admission to DOC facilities;

cc. failing to ensure access to necessary medications, including insulin in the proper dosage;

dd. failing to appropriately staff medical providers at CCCF in numbers sufficient to adequately observe Louis and address his medical needs;

ee. failing to take Louis to the hospital before it was too late to save him; and

ff. failing to take complaints regarding Louis's diabetes seriously and to elevate those complaints in a timely and appropriate fashion to ensure no delay in care occurred sufficient to cause harm to a Louis.

97.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Defendants John Doe Medical Providers 1-10, Louis was caused to sustain serious injuries, including death, as set forth above, the full substance of which is fully incorporated herein by reference.

98.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Defendant John Doe Medical Providers 1-10, Defendant John Doe Medical Providers 1-10 increased the risk of harm to Louis and Louis suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described above and, loss of earnings throughout his life expectancy, for which Plaintiff here makes claim.

99.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Defendant John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been caused to incur various funeral, burial and Estate administration expenses for which the Plaintiff is entitled to compensation in these proceedings.

100.    As a direct and proximate result of the recklessness, negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Louis's companionship, guidance, services, counsel, society and comfort.

101.    As a direct and proximate result of the recklessness, negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries suffered, are suffering, and will for an indefinite period of time in the future suffer damages, injuries and losses, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from Louis, including monies which Louis would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

102.    As a direct and proximate result of the recklessness, negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Louis would have contributed to their support.

103.    As a direct and proximate result of the recklessness, negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications rendered to Louis, for which Plaintiff is entitled to compensation in this proceeding.

## COUNT IV
### DIRECT MEDICAL NEGLIGENCE AND VICARIOUS LIABILITY/ RESPONDEAT SUPERIOR/APPARENT AUTHORITY
### Plaintiff v. CHS, CHN, and John Doe Correctional Medical Entities 1–10

104.    All preceding allegations are incorporated by reference as if fully set forth herein.

105.    Count IV is alleged by Plaintiff against CHS, CHN, and John Doe Correctional Medical Entities 1–10.

106.    Plaintiff brings this action on behalf of himself and the wrongful death beneficiaries of Louis A. Coon, as aforementioned, pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, *et seq.*, and claims all damages recoverable thereunder.

107.    Plaintiff brings this action on behalf of the Estate of Louis A. Coon pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3 *et seq* and claims all damages recoverable thereunder.

108.    At all relevant times, by virtue of his status as a pretrial detainee, Louis was a patient of CHS, CHN, and John Doe Correctional Medical Entities 1–10.

109.    At all relevant times, as a provider of medical services, CHS, CHN, and John Doe Correctional Medical Entities 1–10, jointly and severally and/or separately, were obligated to develop and follow proper protocols to ensure a safe health care environment for their patients in accordance with rules, regulations and standards set forth by the New Jersey Department of Health and Joint Commission on Accreditation of Healthcare Organizations ("JCAHO").

110.    At all relevant times, no legally recognized immunity existed or exists to shield CHS and CHN from being sued directly for negligence.

111.    At all relevant times, CHS, CHN, and John Doe Correctional Medical Entities 1–10 owed certain non-delegable duties to Louis.

112.    CHS, CHN, and John Doe Correctional Medical Entities 1–10 owed non-delegable duties directly to Louis that included but are not limited to:

  a.  use reasonable care in the maintenance of safe and adequate facilities and equipment;

  b.  retain and select only competent physicians and other medical staff;

    c.  oversee all persons who practice or otherwise provide medical care within their walls; and

    d.  formulate, adopt and enforce adequate rules, policies, procedures and protocols to ensure quality care for patients.

113.    The injuries sustained by Louis set forth above, including, but not limited to, his death, were proximately caused by the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, jointly and severally and/or separately, both generally and in at least the following particular respects:

    a.  Failing to ensure CCCF was a safe and adequate facility and properly equipped to timely and adequately assess pretrial detainees medical needs, perform intake and continuing assessments/evaluations, deliver and administer necessary medications, perform necessary diagnostic testing, and provide necessary medical monitoring of pretrial detainees;

    b.  Failing to retain and select only competent physicians and other medical staff, who could exercise reasonable care, timely and properly assess/evaluate pretrial detainees, timely identify medical conditions in pretrial detainees, provide appropriate monitoring to pretrial detainees, and appropriately treat conditions present in pretrial detainees;

    c.  Failing to appropriately oversee physicians and medical staff to ensure timely and appropriate evaluation, assessments, monitoring, and treatment of pretrial detainees; and

    d.  Failing to formulate, adopt and enforce adequate rules, policies, procedures and protocols to ensure quality care for pretrial detainees.

114. Prior to the incidents alleged in this Complaint, CHS, CHN, and John Doe Correctional Medical Entities 1–10 had actual or constructive knowledge of the defects and/or failings in their rules, policies, procedures and/or guidelines, but consciously disregarded these defects and/or failings to the detriment of patients, such as Louis.

115. Additionally, at all relevant times, upon information and belief, CHS, CHN, and John Doe Correctional Medical Entities 1–10 were agents of each other in the provision of medical care to Louis and, in the course of their agency relationship, authorized one another to provide medical care to patients, including Louis.

116. Under the doctrine of corporate negligence, CHS, CHN, and John Doe Correctional Medical Entities 1–10, jointly and severally and/or separately, are additionally liable generally and for the acts and omissions of Defendant Medical Professionals described herein.

117. Under the doctrines of vicarious liability/Respondeat Superior CHS, CHN, and John Doe Correctional Medical Entities 1–10, jointly and severally and/or separately, are additionally liable generally and for the negligence acts and omissions of their agents and/or employees set forth in detail in Counts III and V.

118. At all relevant times, upon information and belief, CHS, CHN, and John Doe Correctional Medical Entities 1–10 were agents of each other in the provision of medical care to Louis and, in the course of their agency relationship, authorized one another to provide medical care to patients, including Louis.

119. At all relevant times, upon information and belief, John Doe Medical Providers 1-10 were employees, agents, apparent agents, ostensible agents, agents by estoppel and/or servants of CHS, CHN, and/or John Doe Correctional Medical Entities 1–10.

120.    To the extent that John Doe Medical Providers 1-10 are not agents or employees of CHS, CHN, and John Doe Correctional Medical Entities 1–10, at all relevant times, CHS, CHN, and John Doe Correctional Medical Entities 1–10 held out John Doe Medical Providers 1-10 as their agents.

121.    CHS, CHN, and John Doe Correctional Medical Entities 1–10 are vicariously responsible for the acts, omissions, recklessness, negligence, and carelessness of John Doe Medical Providers 1-10 that occurred in the scope of their employment, agency, and/or apparent agency.

122.    CHS, CHN, and John Doe Correctional Medical Entities 1–10 are liable to Plaintiff under the theory and principles of Agency and Respondeat Superior/Vicarious Liability.

123.    As a direct and proximate result of the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis was caused to sustain serious injuries, including death, as set forth above, the full substance of which is fully incorporated herein by reference.

124.    As a direct and proximate result of the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, CHS, CHN, and John Doe Correctional Medical Entities 1–10, increased the risk of harm to Louis and Louis suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described above and, loss of earnings throughout his life expectancy, for which Plaintiff here makes claim.

125.    As a direct and proximate result of the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death

beneficiaries have been caused to incur various funeral, burial and Estate administration expenses for which the Plaintiff is entitled to compensation in these proceedings.

126.    As a direct and proximate result of the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Louis's companionship, guidance, services, counsel, society and comfort.

127.    As a direct and proximate result of the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries suffered, are suffering, and will for an indefinite period of time in the future suffer damages, injuries and losses, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from Louis, including monies which Louis would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

128.    As a direct and proximate result of the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Louis would have contributed to their support.

129.    As a direct and proximate result of the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications rendered to Louis, for which Plaintiff is entitled to compensation in this proceeding.

## COUNT V
## MEDICAL NEGLIGENCE-GROSS NEGLIGENCE

**Plaintiff v. John Doe Medical Providers 1-10**

130.    All preceding allegations are incorporated by reference as if fully set forth herein.

131.    Count V is alleged by Plaintiff against John Doe Medical Providers 1-10.

132.    Plaintiff brings this action on behalf of herself and the wrongful death beneficiaries of Louis A. Coon, as aforementioned, pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, *et seq.*, and claims all damages recoverable thereunder.

133.    Plaintiff brings this action on behalf of the Estate of Louis A. Coon pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3 *et seq* and claims all damages recoverable thereunder.

134.    The injuries sustained by Louis set forth above, including, but not limited to, his death, were proximately caused by the recklessness, gross negligence and/or carelessness of John Doe Medical Providers 1-10, jointly and severally and/or separately, generally and in at least the following particular respects:

    a.  failing to appropriately investigate and evaluate Louis's specific medical condition upon admission to CCCF;

    b.  failing to timely identify that Louis's Type 1 diabetes;

    c.  failing to medically address Louis's Type 1 diabetes;

    d.  failing to provide proper medical care for Louis' Type 1 diabetes;

    e.  failing to order appropriate medication and medical equipment for Louis's Type 1 diabetes;

    f.  failing to administer proper medication and monitoring for Louis's Type 1 diabetes;

    g.  failing to timely and adequately assess Louis's risk factor for diabetic ketoacidosis;

    h.  failing to ensure proper medical supervision over Louis's chronic medical condition;

27

i.   failing to timely and adequately identify Louis's diabetic ketoacidosis;

j.   failing to timely and adequately diagnose Louis's diabetic ketoacidosis;

k.   failing to timely and adequately assess the degree of Louis's diabetic ketoacidosis;

l.   failing to order and/or obtain proper diagnostic testing in the care of Louis, including blood sugar monitoring;

m.  failing to appropriately investigate and evaluate Louis's diabetic ketoacidosis;

n.   failing to consider alternative treatments for Louis's diabetic ketoacidosis;

o.   failing to intervene and treat Louis's diabetic ketoacidosis before it was so severe as to render him unconscious and kill him;

p.   failing to take any mitigating or precautionary measures to account for Louis's diabetic ketoacidosis in the context of his admission to CCCF;

q.   failing to alter or modify policies or procedures upon acceptance or admission of Louis to address his specific medical condition;

r.   failing to ensure the availability and use of appropriate equipment in the care and treatment of Louis's specific medical condition;

s.   failing to discuss with Louis his Type 1 diabetes, the risk of diabetic ketoacidosis, the need for insulin medication, the need for blood sugar monitoring, or the physical stress that incarceration can cause to diabetics and the ramifications thereof;

t.   failing to perform through intake assessments on Louis;

u.   failing to determine Louis's medical conditions at intake into CCCF;

v.   failing to review Louis's medical history at intake into CCCF;

w.  failing to properly conduct medical examinations at intake into CCCF;

x.   failing to appropriately schedule and perform reassessments of Louis;

y. failing to ensure proper ordering and administration of insulin medication to Louis;

z. failing to monitor Louis for signs and symptoms of diabetic ketoacidosis;

aa. failing to implement adequate intake screening protocols;

bb. failing to adhere to NJDOC directives concerning admission to DOC facilities;

cc. failing to ensure access to necessary medications, including insulin in the proper dosage;

dd. failing to appropriately staff medical providers at CCCF in numbers sufficient to adequately observe Louis and address his medical needs;

ee. failing to take Louis to the hospital before it was too late to save him; and

ff. failing to take complaints regarding Louis's diabetes seriously and to elevate those complaints in a timely and appropriate fashion to ensure no delay in care occurred sufficient to cause harm to a Louis.

135. John Doe Medical Providers 1-10 failures to exercise slight care or diligence created an unreasonable risk of harm to Louis.

136. As a direct and proximate result of the recklessness, gross negligence and/or carelessness of the John Doe Medical Providers 1-10, Louis was caused to sustain serious injuries, including death, as set forth above, the full substance of which is fully incorporated herein by reference.

137. As a direct and proximate result of the recklessness, gross negligence and/or carelessness of John Doe Medical Providers 1-10, John Doe Medical Providers 1-10 increased the risk of harm to Louis and Louis suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described above and, loss of earnings throughout his life expectancy, for which Plaintiff here makes claim.

138.   As a direct and proximate result of the recklessness, gross negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been caused to incur various funeral, burial and Estate administration expenses for which the Plaintiff is entitled to compensation in these proceedings.

139.   As a direct and proximate result of the recklessness, gross negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Louis's companionship, guidance, services, counsel, society and comfort.

140.   As a direct and proximate result of the recklessness, gross negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries suffered, are suffering, and will for an indefinite period of time in the future suffer damages, injuries and losses, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from Louis, including monies which Louis would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

141.   As a direct and proximate result of the recklessness, gross negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Louis's would have contributed to their support.

142.   As a direct and proximate result of the recklessness, gross negligence and/or carelessness of John Doe Medical Providers 1-10, Louis's wrongful death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care,

nursing care and medications rendered to Louis, for which Plaintiff is entitled to compensation in this proceeding.

<u>COUNT VI</u>
**MEDICAL NEGLIGENCE- GROSS NEGLIGENCE**
**AND VICARIOUS LIABILITY**
**Plaintiff v. CHS, CHN, and John Doe Correctional Medical Entities 1–10**

143.    All preceding allegations are incorporated by reference as if fully set forth herein.

144.    Count VI is alleged by Plaintiff against CHS, CHN, and John Doe Correctional Medical Entities 1–10.

145.    Plaintiff brings this action on behalf of himself and the wrongful death beneficiaries of Louis A. Coon, as aforementioned, pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, *et seq.*, and claims all damages recoverable thereunder.

146.    Plaintiff brings this action on behalf of the Estate of Louis A. Coon pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3 *et seq* and claims all damages recoverable thereunder.

147.    At all relevant times, as a provider of medical services, CHS, CHN, and John Doe Correctional Medical Entities 1–10 were obligated to develop and follow proper protocols to ensure a safe health care environment for their patients in accordance with rules, regulations and standards set forth by the New Jersey Department of Health and Joint Commission on Accreditation of Healthcare Organizations ("JCAHO").

148.    At all relevant times, no legally recognized immunity existed or exists to shield CHS and CHN from being sued directly for gross negligence.

149.    CHS, CHN, and John Doe Correctional Medical Entities 1–10 owed non-delegable duties directly to Louis that included but are not limited to:

      a.  use reasonable care in the maintenance of safe and adequate facilities and equipment;

b. retain and select only competent physicians and other medical staff;

c. oversee all persons who practice or otherwise provide medical care within their walls; and

d. formulate, adopt and enforce adequate rules, policies, procedures and protocols to ensure quality care for patients.

150. Under the doctrine of corporate negligence, CHS, CHN, and John Doe Correctional Medical Entities 1–10, jointly and severally and/or separately, are additionally liable generally and for the acts and omissions of John Doe Medical Providers 1-10 described herein.

151. The injuries sustained by Louis set forth above, including, but not limited to, his death, were proximately caused by the recklessness, negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, jointly and severally and/or separately, both generally and in at least the following particular respects:

a. Failing to ensure CCCF was a safe and adequate facility and properly equipped to timely and adequately assess pretrial detainees medical needs, perform intake and continuing assessments/evaluations, deliver and administer necessary medications, perform necessary diagnostic testing, and provide necessary medical monitoring of pretrial detainees;

b. Failing to retain and select only competent physicians and other medical staff, who could exercise reasonable care, timely and properly assess/evaluate pretrial detainees, timely identify medical conditions in pretrial detainees, provide appropriate monitoring to pretrial detainees, and appropriately treat conditions present in pretrial detainees;

c. Failing to appropriately oversee physicians and medical staff to ensure timely and appropriate evaluation, assessments, monitoring, and treatment of pretrial detainees; and

d. Failing to formulate, adopt and enforce adequate rules, policies, procedures and protocols to ensure quality care for pretrial detainees.

152. Prior to the incidents alleged in this Complaint, CHS, CHN, and John Doe Correctional Medical Entities 1–10 had actual or constructive knowledge of the defects and/or failings in their rules, policies, procedures and/or guidelines, but consciously disregarded these defects and/or failings to the detriment of patients, such as Louis.

153. The injuries sustained by Louis, as set forth above, including, but not limited to, his death, were proximately caused by the recklessness, gross negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10.

154. Additionally, at all relevant times, upon information and belief, CHS, CHN, and John Doe Correctional Medical Entities 1–10 were agents of each other in the provision of medical care to Louis and, in the course of their agency relationship, authorized one another to provide medical care to patients, including Louis.

155. At all relevant times, upon information and belief, John Doe Medical Providers 1-10 were employees, agents, apparent agents, ostensible agents, agents by estoppel and/or servants of CHS, CHN, and John Doe Correctional Medical Entities 1–10.

156. CHS, CHN, and John Doe Correctional Medical Entities 1–10 are vicariously responsible for the acts, omissions, recklessness, gross negligence, and carelessness of John Doe Medical Providers 1-10.

157.    CHS, CHN, and John Doe Correctional Medical Entities 1–10 are liable to Plaintiff under the theory and principles of Agency and Respondeat Superior/Vicarious Liability.

158.    As a direct and/or proximate result of the recklessness, gross negligence and/or carelessness of the CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis was caused to sustain serious injuries, including death, as set forth above, the full substance of which is fully incorporated herein by reference.

159.    As a direct and proximate result of the recklessness, gross negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, CHS, CHN, and John Doe Correctional Medical Entities 1–10 increased the risk of harm to Louis and Louis suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described above and, loss of earnings throughout his life expectancy, for which Plaintiff here makes claim.

160.    As a direct and proximate result of the recklessness, gross negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been caused to incur various funeral, burial and Estate administration expenses for which the Plaintiff is entitled to compensation in these proceedings.

161.    As a direct and proximate result of the recklessness, gross negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Louis's companionship, guidance, services, counsel, society and comfort.

162.    As a direct and proximate result of the recklessness, gross negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries suffered, are suffering, and will for an indefinite period of time in the future

34

suffer damages, injuries and losses, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from Louis, including monies which Louis would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

163.    As a direct and proximate result of the recklessness, gross negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Louis would have contributed to their support.

164.    As a direct and proximate result of the recklessness, gross negligence and/or carelessness of CHS, CHN, and John Doe Correctional Medical Entities 1–10, Louis's wrongful death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications rendered to Louis, for which Plaintiff is entitled to compensation in this proceeding.

## COUNT VII
### NEGLIGENCE
### Plaintiff v. Warden Taylor and John Doe Correctional Officers 1-10

165.    All preceding allegations are incorporated by reference as if fully set forth herein.

166.    Count VII is alleged by Plaintiff against Warden Taylor and John Doe Correctional Officers 1-10.

167.    Plaintiff brings this action on behalf of himself and the wrongful death beneficiaries of Louis A. Coon, as aforementioned, pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, *et seq.*, and claims all damages recoverable thereunder.

168.    Plaintiff brings this action on behalf of the Estate of Louis A. Coon pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3 *et seq* and claims all damages recoverable thereunder.

169.    The injuries sustained by Louis set forth above, including, but not limited to, his death, were proximately caused by the recklessness, negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, jointly and severally and/or separately, both generally and in at least the following particular respects:

   a.   failing to appropriately investigate and evaluate Louis's specific medical condition upon admission to CCCF;

   b.   failing to timely identify that Louis was a Type 1 diabetic;

   c.   failing to timely and adequately assess Louis's risk factor for diabetic ketoacidosis;

   d.   failing to timely and adequately identify Louis's diabetic ketoacidosis;

   e.   failing to timely and adequately assess the degree of Louis's diabetic ketoacidosis;

   f.   failing to timely and adequately communicate with medical providers regarding Louis's Type 1 diabetes, risk of diabetic ketoacidosis, or diabetic ketoacidosis;

   g.   failing to timely and adequately transport Louis to medical providers, or bring medical providers to Louis, for proper diagnostic testing, blood sugar monitoring, or administration of insulin medication;

   h.   failing to timely and adequately investigate Louis's poor condition or complaints, or to make medical providers aware of same and facilitate access to Louis;

   i.   failing to appropriately observe Louis while he was detained at CCCF;

   j.   failing to alter or modify policies or procedures upon acceptance or admission of Louis to address his specific medical condition;

   k.   failing to ensure the availability and use of appropriate equipment in the care and treatment of Louis's specific medical condition;

l.  failing to discuss, with Louis, his Type 1 diabetes, the risk of diabetic ketoacidosis, the need for insulin medication, the need for blood sugar monitoring, or the physical stress that incarceration can cause to diabetics and the ramifications thereof;

m.  failing to perform through intake assessments on Louis;

n.  failing to determine Louis's medical conditions at intake into CCCF;

o.  failing to review Louis's medical history at intake into CCCF;

p.  failing to ensure medical providers had performed medical examination on Louis upon his admission to CCCF;

q.  failing appropriately schedule medical treatment and sick visit appointments for Louis;

r.  failing to prevent Louis from becoming disoriented in the CCCF shower facility;

s.  failing to monitor Louis for signs and symptoms of diabetic ketoacidosis;

t.  failing to implement adequate intake screening protocols;

u.  failing to adhere to NJDOC directives concerning admission to DOC facilities;

v.  failing to ensure access to necessary medications, including insulin;

w.  failing to appropriately staff medical providers and correctional staff at CCCF in numbers sufficient to adequately observe Louis and address his medical needs; and

x.  failing to take complaints regarding Louis's diabetes seriously and to elevate those complaints in a timely and appropriate fashion to ensure no delay in care occurred sufficient to cause harm to a Louis.

170.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis was caused to sustain serious

injuries, including death, as set forth above, the full substance of which is fully incorporated herein by reference.

171.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Warden Taylor and John Doe Correctional Officers 1-10 increased the risk of harm to Louis and Louis suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described above and, loss of earnings throughout his life expectancy, for which Plaintiff here makes claim.

172.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries have been caused to incur various funeral, burial and Estate administration expenses for which the Plaintiff is entitled to compensation in these proceedings.

173.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Louis's companionship, guidance, services, counsel, society and comfort.

174.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries suffered, are suffering, and will for an indefinite period of time in the future suffer damages, injuries and losses, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from Louis, including monies which Louis would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

175.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Louis would have contributed to their support.

176.    As a direct and proximate result of the recklessness, negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications rendered to Louis, for which Plaintiff is entitled to compensation in this proceeding.

### COUNT VIII
### GROSS NEGLIGENCE
### Plaintiff v. Warden Taylor and John Doe Correctional Officers 1-10

177.    All preceding allegations are incorporated by reference as if fully set forth herein.

178.    Count VIII is alleged by Plaintiff against Warden Taylor and John Doe Correctional Officers 1-10.

179.    Plaintiff brings this action on behalf of herself and the wrongful death beneficiaries of Louis A. Coon, as aforementioned, pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, *et seq.*, and claims all damages recoverable thereunder.

180.    Plaintiff brings this action on behalf of the Estate of Louis A. Coon pursuant to the New Jersey Survival Act, N.J.S.A. 2A:15-3 *et seq* and claims all damages recoverable thereunder.

181.    The injuries sustained by Louis set forth above, including, but not limited to, his death, were proximately caused by the recklessness, gross negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, jointly and severally and/or separately, generally and in at least the following particular respects:

a.   failing to appropriately investigate and evaluate Louis's specific medical condition upon admission to CCCF;

b.   failing to timely identify that Louis was a Type 1 diabetic;

c.   failing to timely and adequately assess Louis's risk factor for diabetic ketoacidosis;

d.   failing to timely and adequately identify Louis's diabetic ketoacidosis;

e.   failing to timely and adequately assess the degree of Louis's diabetic ketoacidosis;

f.   failing to timely and adequately communicate with medical providers regarding Louis's Type 1 diabetes, risk of diabetic ketoacidosis, or diabetic ketoacidosis;

g.   failing to timely and adequately transport Louis to medical providers, or bring medical providers to Louis, for proper diagnostic testing, blood sugar monitoring, or administration of insulin medication;

h.   failing to timely and adequately investigate Louis's poor condition or complaints, or to make medical providers aware of same and facilitate access to Louis;

i.   failing to appropriately observe Louis while he was detained at CCCF;

j.   failing to alter or modify policies or procedures upon acceptance or admission of Louis to address his specific medical condition;

k.   failing to ensure the availability and use of appropriate equipment in the care and treatment of Louis's specific medical condition;

l.   failing to discuss with Louis his Type 1 diabetes, the risk of diabetic ketoacidosis, the need for insulin medication, the need for blood sugar monitoring, or the physical stress that incarceration can cause to diabetics and the ramifications thereof;

m.   failing to perform through intake assessments on Louis;

n.   failing to determine Louis's medical conditions at intake into CCCF;

40

o. failing to review Louis's medical history at intake into CCCF;

p. failing to ensure medical providers had performed medical examination on Louis upon his admission to CCCF;

q. failing appropriately schedule medical treatment and sick visit appointments for Louis;

r. failing to prevent Louis from becoming disoriented in the CCCF shower facility;

s. failing to monitor Louis for signs and symptoms of diabetic ketoacidosis;

t. failing to implement adequate intake screening protocols;

u. failing to adhere to NJDOC directives concerning admission to DOC facilities;

v. failing to ensure access to necessary medications, including insulin;

w. failing to appropriately staff medical providers and correctional staff at CCCF in numbers sufficient to adequately observe Louis and address his medical needs; and

x. failing to take complaints regarding Louis's diabetes seriously and to elevate those complaints in a timely and appropriate fashion to ensure no delay in care occurred sufficient to cause harm to a Louis.

182. Warden Taylor and John Doe Correctional Officers 1-10 failures to exercise slight care or diligence created an unreasonable risk of harm to Louis.

183. As a direct and proximate result of the recklessness, gross negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis was caused to sustain serious injuries, including death, as set forth above, the full substance of which is fully incorporated herein by reference.

184. As a direct and proximate result of the recklessness, gross negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Warden Taylor and John

Doe Correctional Officers 1-10 increased the risk of harm to Louis and Louis suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described above and, loss of earnings throughout his life expectancy, for which Plaintiff here makes claim.

185.     As a direct and proximate result of the recklessness, gross negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries have been caused to incur various funeral, burial and Estate administration expenses for which the Plaintiff is entitled to compensation in these proceedings.

186.     As a direct and proximate result of the recklessness, gross negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries have been, continue to be, and will in the future be wrongfully deprived of Louis's companionship, guidance, services, counsel, society and comfort.

187.     As a direct and proximate result of the recklessness, gross negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries suffered, are suffering, and will for an indefinite period of time in the future suffer damages, injuries and losses, including, but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from Louis, including monies which Louis would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

188.     As a direct and proximate result of the recklessness, gross negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Louis's would have contributed to their support.

189.    As a direct and proximate result of the recklessness, gross negligence and/or carelessness of Warden Taylor and John Doe Correctional Officers 1-10, Louis's wrongful death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, nursing care and medications rendered to Louis, for which Plaintiff is entitled to compensation in this proceeding.

**COUNT IX**
**N.J.S.A. § 10:6-1, et seq. - STATE CIVIL RIGHTS VIOLATION**
**(Inadequate Medical Care)**
**Plaintiff v. All Defendants**

190.    All preceding allegations are incorporated by reference as if fully set forth herein.

191.    Count IX is alleged by Plaintiff against all Defendants.

192.    All defendants were acting under color of state law when they failed to provide Louis with adequate medical care, failed to train and supervise medical staff and otherwise violated his rights.

193.    During his detention at CCCF, Louis had the clearly established constitutional right to adequate medical care under Article I, paragraph 1 of the New Jersey Constitution. All Defendants reasonably should have known that Louis had this right.

194.    Defendants failed to provide adequate medical care to Louis by failing to assess, diagnose, treat, monitor and protect him from injury, harm and/or death.

195.    Defendants failed to adequately train or otherwise have and maintain effective policies and training of employees and medical staff at CCCF to provide adequate medical care to pretrial detainees and to protect pretrial detainees, including Louis, from injury, harm or death. The Defendants acted wantonly, with callous and reckless disregard, and with deliberate indifference to Louis's constitutionally protected right to receive adequate medical care while detained at CCCF.

43

196.    As a direct and proximate result of all Defendants' unconstitutional failure to provide adequate medical care and failure to implement a policy, practice, or custom that would have prevented a constitutional injury, Louis died while still in custody.

197.    Accordingly, Plaintiff is entitled to compensatory damages from all Defendants, including economic and emotional distress damages, as well as punitive damages.

**COUNT X**
**N.J.S.A. § 10:6-1, et seq. - STATE CIVIL RIGHTS VIOLATION**
**(Inadequate Supervision and Training of Medical Staff)**
**Plaintiff v. All Defendants**

198.    All preceding allegations are incorporated by reference as if fully set forth herein.

199.    Count X is alleged by Plaintiff against all Defendants.

200.    All Defendants were acting under color of state law when they failed to provide Louis with adequate medical care, failed to train and supervise medical staff and otherwise violated his rights.

201.    During his detention at CCCF, Louis had the clearly established constitutional right to adequate medical care under Article I, paragraph 1 of the New Jersey Constitution. All Defendants reasonably should have known that Louis had this right.

202.    Warden Taylor, John Doe Correctional Officers 1-10, John Doe Medical Providers 1-10, Camden County, CHS, CHN, and John Doe Correctional Medical Entities 1–10 failed to provide adequate medical care to Louis by failing to assess, diagnose, treat, monitor and protect him from injury, harm or death.

203.    Warden Taylor, John Doe Correctional Officers 1-10, John Doe Medical Providers 1-10, Camden County, CHS, CHN, and John Doe Correctional Medical Entities 1–10 failed to adequately train and failed to properly supervise, or otherwise have and maintain effective policies and training of employees and medical staff at CCCF to provide adequate medical care to pretrial

44

detainees and to protect pretrial detainees, including Louis, from injury, harm or death. Defendants acted wantonly, with callous and reckless disregard, and with deliberate indifference to Louis's constitutionally protected right to receive adequate medical care while detained at CCCF.

204.    As a direct and proximate result of all Defendants' unconstitutional failure to provide adequate medical care and failure to implement a policy, practice, or custom that would have prevented a constitutional injury, Louis died while still in custody.

205.    Accordingly, Plaintiff is entitled to compensatory damages from all Defendants, including economic and emotional distress damages, as well as punitive damages.

## COUNT XI
## WRONGFUL DEATH
## Plaintiff v. All Defendants

206.    All preceding allegations are incorporated by reference as if fully set forth herein.

207.    Count XI is alleged by Plaintiff against all Defendants.

208.    The decedent Louis Coon is survived by his child, G.C.

209.    By reason of the death of the decedent, G.C. has suffered great pecuniary loss, including the loss of support and contributions, such as for shelter, food, clothing, medical care, education, entertainment, gifts, and recreation.

210.    G.C. has also suffered the loss of the services, society, and comfort that the decedent would have provided them, including the value of such elements as assistance with work around the home, provision of physical comforts, services, society, assistance, care, and comfort.

211.    G.C. has suffered a substantial loss of contributions to them, including the loss of guidance and advice that Louis A. Coon would have provided, and these losses will continue into the future.

212.    In addition, damages have been incurred for medical expenses, funeral expenses, and expenses of administration.

213.    Neither decedent nor anyone on his behalf recovered any damages in any action against defendants during his lifetime for the injuries and losses which he suffered by reason of the negligence, carelessness, recklessness, and tortious conduct of the defendants.

214.    Plaintiff brings this action and claims all recoverable wrongful death benefits and damages on behalf of all persons entitled to recover under the law, including those damages permitted by the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1.

### COUNT XII
### SURVIVAL
### Plaintiff v. All Defendants

215.    All preceding allegations are incorporated by reference as if fully set forth herein.

216.    Count XII is alleged by Plaintiff against all Defendants.

217.    Frank A. Coon, as Administrator for the Estate of Louis A. Coon, deceased, claims on behalf of the Estate all damages suffered by the Estate by reason of the death of Louis A. Coon, including but not limited to the following: the severe injuries to Louis Coon, which resulted in his death; the anxiety, emotional distress, fear, pain, suffering and other intangible losses which Louis Coon, suffered prior to his death; the loss of future earning capacity suffered by Louis Coon from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained; and the total limitation and deprivation of his normal activities, pursuits, and pleasures as a result of the injuries sustained by reason of the negligence, carelessness, recklessness, and tortious conduct of defendants.

218.    Plaintiff brings this action on behalf of the Estate of Louis Coon, deceased, and claims all survival benefits and damages on behalf of all persons entitled to recover under the law, including those damages permitted by the New Jersey Survival Act and/or Executors and Administrators Act, N.J.S.A. 2A:15-3.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief: compensatory damages, punitive damages, attorneys' fees, interest and costs, and such other legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: September 16, 2025          **GRANT & EISENHOFER P.A.**

/s/ Steven A. Medina
Elizabeth A. Bailey
Steven A. Medina
123 Justison Street
Wilmington, DE 19801
302-622-7086
ebailey@gelaw.com
smedina@gelaw.com

*Attorneys for Plaintiff Frank Coon,
individually and as administrator of the
Estate of Louis A. Coon*